428 A.2d 981

**COMMONWEALTH of Pennsylvania**

v.

**Edward S. STIEFEL.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed April 16, 1981.

Donald R. Calaiaro, Pittsburgh, for appellant.

Charles W. Johns, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

■■■ This appeal is from judgments of sentence for rape, indecent assault, burglary, simple assault, recklessly endangering another person, and terroristic threats. Appellant argues that he is entitled to a new trial because his trial counsel was ineffective. This argument is made by the same office—the Allegheny County Public Defender—as represented appellant at trial. Nothing in the record indicates that appellant made a knowing choice to continue to be represented by the office he claims was ineffective. *Cf. Commonwealth v. Gardner*, 480 Pa. 7, 389 A.2d 58 (1978); *Commonwealth v. Roach*, 268 Pa.Super. 340, 408 A.2d 495 (1979). At minimum, therefore, appellant is entitled to a remand for appointment of appellate counsel not associated with the defender's office. *Commonwealth v. Patrick*, 477 Pa. 284, 383 A.2d 935 (1978); *Commonwealth v. Wright*, 473 Pa. 395, 374 A.2d 1272 (1977); *Commonwealth v. Boyer*, 277 Pa.Super. 82, 419 A.2d 671 (1980).[1] However, if the ineffectiveness of counsel is apparent on the face of the record, there is no need to remand for appointment of new counsel. *Commonwealth v. Drake*, 489 Pa. 541, 414 A.2d 1023 (1980); *Commonwealth v. Fox*, 476 Pa. 475, 383 A.2d 199 (1978). The appropriate remedy is to grant a new trial. We have concluded that this is a case where the ineffectiveness of trial counsel is apparent on the face of the record.[2] We shall therefore vacate the sentence and remand for new trial.

1. This conflict in representation is not acknowledged in appellant's brief although it is by the Commonwealth in its brief. This failure is itself an illustration of the importance of having appellate counsel not associated with trial counsel when ineffectiveness of trial counsel is being argued. The issue of a conflict in representation is, however, an issue that we may raise *sua sponte. Commonwealth v. Lennox*, 270 Pa.Super. 254, 411 A.2d 514 (1979).

2. Having reached this conclusion, we find it unnecessary to consider the other issues raised by appellant on this appeal. The dissent discusses the lower court's refusal to allow impeachment of the victim by introducing evidence of her reputation in the community for truth and veracity. Because this issue was not preserved in post-trial motions, it is not properly before us. However, since it is

One of appellant's claims is that his trial counsel was ineffective in filing overly general, "boilerplate," post-trial motions. For example, paragraph number 5 of the motion for new trial read: "The learned Trial Court erred in denying Defendant's motions made during the trial." The lower court properly refused to consider such a general assignment of error. Pa.R.Cr.P. 1123(a); *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). One assignment of error that the lower court did find specific enough to require consideration was paragraph number 6 of the motion for new trial, which read: The learned Trial Court erred in denying Defendant's motion for a postponement." We agree with the lower court that it did not err in denying the motion for postponement. However, this conclusion compels us to the further conclusion that appellant's trial counsel was ineffective.

At trial, the victim testified as follows. Appellant was a friend of her younger brothers' and had stayed with them in her house while she had been out of town a few weeks before the night in question. On that night, at about 11 p. m., she was asleep in her living room when appellant appeared in the room. He no longer had a key to the house and she assumed he had entered through an unlocked upstairs window, which was accessible from the ground. Appellant told her he was looking for something he had left in

discussed by the dissent it is appropriate to point out that on successive pages of the notes of testimony, trial counsel first tried to lay the foundation for asking the witness about the victim's reputation in the community for truthfulness, N. T. 180, and then tried to ask the witness about her own experience with the victim, *id.* at 181. The dissent appears to look only at the interchange on page 181. It is true that this took place on cross-examination, when there had been no mention of reputation for truthfulness on direct examination. However, much of the witness's direct testimony had consisted of recounting the victim's account to her of the events of the night in question. While this testimony would appear to have been hearsay, no objection was made to it, and it was probably admissible under some exception to the hearsay rule, because the victim spoke to the witness immediately after escaping from her house. By repeating the victim's story, the witness sufficiently placed the victim's truthfulness at issue to make it an appropriate subject for cross-examination, even if the victim had not herself already testified at the trial.

the house. Although he appeared to be drunk or high he left the house without further incident. Much later in the night, when she was asleep in her bed, she again became aware of appellant's being in the house. Over the next several hours he threatened her with a knife, tied her up, and raped her twice.

Appellant gave conflicting testimony, as follows. He had been at a wedding reception until 3 a. m. On his way home from the reception he realized that a chrome strip he needed for a car he was working on was at the victim's house. He went to the house, knocked on the door, and was admitted. After looking unsuccessfully for the chrome strip he sat on the living room couch with the victim and she started making advances to him. He responded to these advances and they engaged in consensual intercourse, which, according to appellant, they had done on two prior occasions.

At the beginning of the trial, appellant's counsel had requested a two-day postponement in order to locate two witnesses who, it was said, could corroborate appellant's account of the early part of the evening. This would provide a partial alibi and also impeach the victim by contradicting her version of appellant's whereabouts on the night in question. Counsel explained that although appellant had been represented from the beginning by the public defender's office, he personally had been assigned the case only the previous Friday, had had another trial in the interim, and had learned only that morning of the two witnesses. The Commonwealth objected to any further delay, and also argued that any alibi witnesses would be subject to exclusion because of failure to comply with Pa.R.Cr.P. 305 C(1), which required the details of an alibi defense and the names of prospective alibi witnesses to be disclosed at the time the omnibus pretrial motion was due to be filed. After a colloquy, during which the lower court acknowledged the staffing problems of the public defender's office and also expressed concern about the cost and inconvenience to the Commonwealth of further delay, the court denied the request for postponement but said that it would try to accom-

modate appellant by ending the first day of trial early so that counsel could try to locate the witnesses. N.T. 13–14. Informal contact was made with at least one of the prospective witnesses, but neither of them was subpoenaed, and neither of them appeared during the trial.

In its opinion in support of its denial of appellant's post–trial motions the lower court wrote:

It appears to the Court that there was sufficient time and opportunity in spite of a late start, for the defendant to have the presence of Mrs. Byrizinski as a witness to testify on his behalf, but that the means of securing the witness's attendance were half-hearted and ineffectual. Instead of asking the witness to come to the process server, why did not the process server go to the witness? It is to be noted that there was no direct request made for the Court to intercede and lend the assistance of means available to the Court to compel the attendance of this witness—or of any other witness. . . .

The Court is of the opinion that there was no prejudice to the defendant in refusing his request for postponement on the grounds of needing time to get witnesses. As it turned out, with the shortened daily sessions and the intervening weekend recess, there was adequate opportunity for defendant to contact his witnesses, even as the trial was in progress. The time required for trial of this case would have been less than two Court days if it had been moved along steadily. Instead, it was spread out and dragged on over a period of six days, with only a few hours of actual Courtroom time being spent in trial in each of those six days.

Slip op., reprinted in appellant's brief at 15a.

A fair paraphrase of these two paragraphs is that the lower court found that its denial of appellant's trial counsel's motion for postponement was not an abuse of discretion because effective counsel would have easily been able to secure the attendance of the witnesses in the time available.

In arguing for the postponement, appellant's trial counsel stated to the lower court that the missing witnesses would testify that appellant was at a wedding reception until 3 a. m. N.T. 4, 21. This would have contradicted the victim's testimony that appellant made his first illicit entry into her home at 11 p. m. The dissent finds that this first entry into the victim's house was a collateral matter because appellant was not charged with any crime resulting from that entry.[3] We are not persuaded by this reasoning. Both entries allegedly took place the same evening, within four hours of each other. It is highly unlikely that the victim would have been accurate in her account of the 3 a. m. entry while making up out of whole cloth an equally detailed account of the earlier entry. The first person to whom the victim told her story, her neighbor, did not testify that she had been told of two separate entries; she could only recall being told of a single sequence of events starting at 11 p. m. N.T. 175–177. The jury was presented with two different accounts of that night, the victim's and appellant's. It is of course possible that even if the missing witnesses had been called and had contradicted the victim's account of the first part of the evening, the jury might still have believed her account of the second part. However, this possibility does not render the testimony collateral. Testimony that contradicted any part of the victim's account of that night would have been admissible. *See* McCormick, *Evidence* § 47 at 99 (2d ed.1972) ("the contradiction of any part of the witness's account of the background and circumstances of a material

3. Appellant's brief, at 8 n. 1 and 9, misstates the chronology of events as related at trial by the victim by stating that the first rape was alleged to have been committed during the first entry into the house. This misstatement greatly limited appellate counsel's ability to argue that testimony of the absent witnesses would have been admissible as impeachment testimony without being subject to exclusion as alibi testimony offered in violation of Rule 305 C(1). It is clear from the notes of testimony that trial counsel understood that appellant was not charged with anything alleged to have happened on the 11 p. m. entry, and that strictly speaking he would be presenting these witnesses for impeachment rather than alibi. N.T. 21. Trial counsel's understanding of the importance of these witnesses makes his ineffectiveness in failing to secure their presence at trial all the more obvious.

transaction, which as a matter of human experience he would not be mistaken about if his story were true [is admissible]"). Because the lower court's opinion as much as finds that the failure to produce these witnesses was a result of the ineffectiveness of counsel and because it appears that what these witnesses would have testified to would have been both admissible and critical to appellant's case, appellant is entitled to a new trial.

■ This case is very similar to *Commonwealth v. Fallings*, 251 Pa.Super. 365, 380 A.2d 822 (1977). Fallings was convicted by a jury of burglary. On appeal he argued that his trial counsel had been ineffective in not securing the presence at trial of one Nathaniel Sutton. Sutton had already pleaded guilty to the same charge. Fallings argued on appeal that Sutton had testified at the preliminary hearing that Fallings was not criminally involved in the burglary, and that if present at trial, Sutton would have repeated that testimony. However, although Fallings' trial counsel sent Sutton a registered letter requesting his presence at trial and made a motion to have Sutton admitted to bail as a material witness—a motion that was unsuccessful because it could be made only by the Commonwealth, Pa.R.Crim.P. 4017(a)—counsel never caused· a subpoena to be issued or served. When Sutton failed to appear at trial, counsel requested a continuance, which was denied. We found that Fallings' counsel had been ineffective in his efforts to secure Sutton's presence at trial.[4] We distinguished *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). In *Twiggs* it was not clear from the record whether counsel's failure to secure the missing witness "was based on a reassessment of its [the witness's testimony] worth and a conclusion that it was of little or no value" or was "the

---

4. Although we stated that the issue of trial counsel's ineffectiveness was properly before us because appellate counsel was different counsel, 251 Pa.Super. at 367 n. 2, 380 A.2d at 823 n. 2, that statement is potentially misleading. Even if an appellant is represented on appeal by trial counsel, relief may be granted if ineffectiveness is apparent on the face of the record, as it was in *Fallings*, and as it is in this case. *Commonwealth v. Drake*, 489 Pa. 541, 414 A.2d 1023 (1980).

result of sloth or lack of awareness of available alternatives," *Commonwealth v. Twiggs*, 460 Pa. at 110–11, 331 A.2d at 443. *Commonwealth v. Fallings*, 251 Pa.Super. at 369–70, 380 A.2d at 824. In *Fallings*, there was no such ambiguity; the record disclosed that counsel's failure to seek compulsory process in the proper manner was not the result of a reassessment of the desirability of securing Sutton's presence. *Id.*, 251 Pa.Super. at 370, 380 A.2d at 824. Having thus found from the face of the record that there could have been no reasonable basis for trial counsel's behavior, we reversed the judgment of sentence and ordered a new trial, citing *Commonwealth v. Turner*, 469 Pa. 319, 365 A.2d 847 (1976). *Id.*, 251 Pa.Super. at 371–72, 380 A.2d at 825. The circumstances of this case require the same result.

Judgments of sentence vacated and case remanded for new trial.

VAN der VOORT, J., files a dissenting opinion.

VAN der VOORT, Judge, dissenting:

We are presently faced with what I consider a novel situation. Under the holdings of *Commonwealth v. Drake*, 489 Pa. 541, 414 A.2d 1023 (1980); and *Commonwealth v. Fox*, 476 Pa. 475, 383 A.2d 199 (1978), if the ineffectiveness of counsel is apparent on the face of the record, and appellant is represented by the same counsel on appeal whose ineffectiveness he is alleging on appeal, we need not remand to determine if appellant freely chose to have counsel represent him. On this point I am in agreement with the majority. I also agree that the present claim of ineffectiveness is clear on the record. The point where I disagree is when ineffectiveness while clear does not surpass harmless error.

In both *Fox* and *Commonwealth v. Roach*, 268 Pa.Super. 340, 408 A.2d 495, ineffectiveness was not clear on the record and the court remanded for the appointment of new counsel. Both cases contain a statement that if "reversible error" is apparent on the record, then the reviewing court should consider the appeal. In those cases, the requirement of

"reversible error" for appellate review, amounts to dictum since the records in *Fox* and *Roach* were not clear and the cases were remanded. Even if we were to abide by the dictum, if we find that the error did not amount to "reversible error," an appellant would only be entitled to a remand. I do not believe that was the result intended; if a court finds harmless error, it should affirm.

Since, for the following reasons, I believe the error was harmless beyond a reasonable doubt I would affirm.

Appellant claims trial counsel was ineffective for failing to subpoena certain witnesses.[1] Such witnesses would have allegedly corroborated appellant's claim that he could not have entered the victim's home at the time the victim claims he first did. The victim testified that appellant made two unauthorized entries, one at 11:00 P.M. and at 3:00 A.M. The alleged rapes were to have occurred subsequent to the 3:00 A.M. entrance. Appellant claims he was at a wedding reception and a following party until 3:00 A.M. Appellant did not deny engaging in the sexual acts but argued they were consensual. Appellant's absent witnesses would have placed him at a location other than the victim's house until 3:00. Defense counsel did not subpoena them. Appellant testified on his own behalf claiming he was at the wedding reception. His wife was permitted to testify concerning the missing witnesses.

The majority holds that such testimony would have been admissible to impeach the credibility of the victim. I disagree, I believe it is wholly collateral. It is a well established legal principle that witnesses cannot be contradicted on

1. Appellant also argues that the court erred in denying him the use of reputation evidence of the victim. While this issue need not be decided by the majority, since they award a new trial on other grounds, I find no merit in it. Appellant attempted to elicit a neighbor's personal opinion of the victim's reputation for truthfulness; this is clearly improper. Only evidence of a *general* reputation in the community is admissible. See: *Commonwealth v. Payne*, 205 Pa. 101, 54 A. 489 (1903); *Commonwealth v. Gaddy*, 468 Pa. 303, 362 A.2d 217 (1976); and Henry, Pennsylvania Evidence, § 804 at 206 (4th ed.1953). Appellant's further claim of ineffectiveness in failing to raise this claim in post-verdict motions is accordingly without merit.

collateral matters to test the witness's credibility. See: *Commonwealth v. Truitt*, 369 Pa. 72, 85 A.2d 425 (1951); *Commonwealth v. Fisher*, 447 Pa. 405, 290 A.2d 262 (1972); and *Commonwealth v. Williamson*, 243 Pa.Super. 139, 144, 364 A.2d 488 (1976) (Spaeth, J. concurring).

> The pivotal issues in a trial cannot be "side-tracked" for the determination of whether or not a witness lied in making a statement about something which has no relationship to the case on trial. The purpose of trials is not to determine the ratings of witnesses for general veracity. [A witness can be contradicted only on matters germane to the issue trying.]
>
> * * * * * *
>
> This collateral (or immaterial) matter cannot be contradicted whether it was brought out on cross-examination or whether it was "volunteered" by the witness either on direct or cross-examination: Wigmore on Evidence, 3rd ed., Vol. 3, page 672, sec. 1007.
>
> Wigmore (supra) says in section 1003. "The only true test [of 'collateralness'] is that laid down in *Attorney-General v. Hitchcock*, 1 Exch. 99 Pellock, C.B. 'Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?'"

*Commonwealth v. Petrillo*, 341 Pa. 209, 223–24, 19 A.2d 288 (1941).

In my opinion appellant's whereabouts at 11:00 P.M. is collateral to the issue of whether he was guilty of rape, burglary and the other related charges. There can be no doubt that he was in the victim's house at 3:00 A.M.; he admits that. I will concede that a victim's credibility is normally at issue, however, here appellant would have us go too far astray. The only issue in contention was whether the victim had consented to appellant's conduct. Such issue had no relation to where appellant may have been at 11:00 P.M. on the night in question.

Since I believe the value of the missing witnesses was of collateral value, this present appeal is dissimilar to both

*Commonwealth v. Fallings*, 251 Pa.Super. 365, 380 A.2d 822 (counsel neglected to subpoena a co-defendant) and *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975) (eyewitness of events leading up to shooting was not subpoenaed).

I would affirm the judgment of sentence.