567 A.2d 1080

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Harold W. SMITH, Jr.**

Superior Court of Pennsylvania.

Submitted April 17, 1989.

Filed Dec. 20, 1989.

Anthony J. Rosini, Asst. Dist. Atty., Shamokin, for Com.

Allen K. Neyhard, Watsontown, for appellee.

Before TAMILIA, POPOVICH and MELINSON, JJ.

MELINSON, Judge:

This is a Commonwealth appeal from an Order dated November 14, 1988 in the Court of Common Pleas of Northumberland County. The trial court Order granted Harold W. Smith, Jr., the appellee, a new trial. We affirm.

Smith was charged with indecent exposure and corruption of minors for alleged incidents involving his seven-year-old stepdaughter. At Smith's trial, the alleged victim testified. Following the child's testimony, the Commonwealth presented the testimony of a family therapist who counseled the child following the alleged incidents. The counselor, Ms. Wiley, was asked on direct examination whether she had "an opinion as to [the child's] ability to in character tell

the truth." The counselor then offered her opinion as to the child's character for telling the truth. No objection was raised by Smith's attorney. Subsequently, Smith was convicted of the crimes charged. Trial counsel withdrew from Smith's representation after filing post-verdict motions. Supplemental post-verdict motions, requesting a new trial, were filed by Smith alleging the ineffectiveness of trial counsel for failing to object to the expert's opinion as to the truth-telling capabilities of the seven-year-old child. The trial court granted Smith's motion for a new trial on this ground. This is the Commonwealth's appeal of the trial court's Order.

On appeal, the Commonwealth argues that "the lower court erred in granting [Smith's] motion for a new trial on the basis of ineffective assistance of counsel as the Commonwealth's testimony did not infringe on the fact[-]finder's obligation to determine the credibility of the witnesses and the introduction of testimony regarding the character for truthfulness of the victim, if in error, was harmless beyond a reasonable doubt." We disagree.

■ There are three elements to a valid claim of ineffective assistance of counsel. First, we inquire into whether the underlying claim is of arguable merit, that is, whether the disputed action or omission is of questionable legal soundness. If the underlying claim is of arguable merit, we then ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interests. If he did, our inquiry ends. If not, the defendant will be granted relief if he can demonstrate that counsel's improper course of conduct was prejudicial to his interests. *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989); *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988).

■ Under Pennsylvania law, only evidence of a general reputation for truthfulness in the community is admissible as character testimony. *Commonwealth v. Stiefel*, 286 Pa.Super. 259, 428 A.2d 981 (1981) (Vander Voort, J. dis-

senting); *see also Commonwealth v. Payne,* 205 Pa. 101, 54 A. 489 (1903); *Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217 (1976); *In Interest of Lawrence J.,* 310 Pa.Super. 351, 456 A.2d 647 (1983); Henry, Pennsylvania Evidence, § 804 at 206 (4th ed. 1953). Thus, an individual's opinion as to a witness's "character for truthfulness," no matter how well the individual knows the witness, is never admissible in this Commonwealth. *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552 (1967), *vacated on other grounds,* 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1968); *Stiefel,* 286 Pa.Super. at 269, 428 A.2d 981; Packel and Poulin, Pennsylvania Evidence § 608.1 at 418 (1987).

■ If a witness is impeached by proof of bad *reputation* for truth and veracity, evidence may then be admitted to prove good *reputation* for truth and veracity. *Wertz v. May,* 21 Pa. 274 (1853); McCormick, Evidence § 49 (3d ed. 1984); Packel and Poulin, Pennsylvania Evidence § 608.1 at 419. Bolstering evidence, however, is not admissible unless the character of the witness has been attacked, and even then, only at the trial court's discretion. *Wertz,* 21 Pa. 274; *Commonwealth v. Ford,* 199 Pa.Super. 102, 184 A.2d 401 (1962); Packel and Poulin, *supra,* at 419.

■ At bar, the Commonwealth witness gave her personal opinion as to the child/witness's character for honesty. Pennsylvania law clearly prohibits this testimony. The length of time the witness counseled or knew the child is clearly of no consequence to this conclusion. Furthermore, it is also decidedly irrelevant that the opinion testimony was offered, according to the Commonwealth, to rehabilitate the child/witness. *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986), states that "[a]lthough opinion evidence is not to be permitted on the issue of a witness' credibility, there remain, of course, all of the traditional methods for developing or attacking a witness' credibility." *Seese,* 512 Pa. at 444, 517 A.2d 920. Because rebuttal or rehabilitative opinion testimony as to a witness's character for telling the truth is not a traditional method for developing a witness's credibility, *Seese* is not supportive of the Commonwealth's

argument at bar. We shall not allow, through circumvention of an established principle of Pennsylvania law, the introduction of testimony which is clearly inadmissible. Finally, evidence impairing the child's reputation for veracity was not offered by Smith; moreover, the Commonwealth witness gave her personal opinion, not general reputational testimony, as to the truth-telling ability of the child. Accordingly, there is merit to Smith's contention that counsel was ineffective for failing to object to the admission of this testimony. We further find that counsel had no reasonable basis for allowing its introduction. *See Commonwealth v. Davis,* 518 Pa. 77, 541 A.2d 315 (1988); *Commonwealth v. Thek,* 376 Pa.Super. 390, 546 A.2d 83 (1988).

■ We also find that the admission of the testimony prejudiced Smith and warranted the grant of a new trial ordered by the trial court. The Pennsylvania Supreme Court has stated:

> The question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness.... The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of jurors to assess. For this reason, the question of a witness' credibility has routinely been regarded as a decision reserved *exclusively* for the jury.

*Commonwealth v. Seese,* 512 Pa. 439, 443, 517 A.2d 920, 922 (1986) (citations omitted) (emphasis added); *see Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988); *Commonwealth v. Davis,* 518 Pa. 77, 541 A.2d 315 (1988); *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976); *Commonwealth v. Dunkle,* 385 Pa.Super. 317, 561 A.2d 5 (1989).

By testifying as to the child's character for telling the truth, the Commonwealth witness usurped the credibility-

determining function of the jury. This infringment upon the jury's sacred domain prejudiced Smith because the credibility of the alleged victim was the linchpin of the Commonwealth's case. *See Commonwealth v. Thek*, 376 Pa.Super. at 399, 546 A.2d at 88.

We find it unwise to create an exception to the credibility-determining function of the jury in a case in which an alleged child/victim testifies. We do not dispute that an alleged child/victim of sexual abuse should have the opportunity to take the witness stand and tell his or her story. The competency considerations for child witnesses, repeatedly articulated in Pennsylvania, are designed to allow a child witness to testify merely if the child has the capacity to have observed the event giving rise to the litigation with a substantial degree of accuracy, can remember the event giving rise to the litigation, has the ability to understand questions and communicate answers, and has a consciousness of the duty to speak the truth. *Commonwealth v. Anderson*, 381 Pa.Super. 1, 552 A.2d 1064 (1988). Furthermore, child witnesses, like all witnesses, are presumed competent to testify. *Anderson*, 381 Pa.Super. at 7, 552 A.2d 1064. From this testimony, the jury, doubtlessly taking into consideration the youth of the witness, can make a determination as to the veracity of the testimony and the credibility of the witness. We find improper, on the other hand, a situation in which an expert witness, or any witness for that matter, takes the witness stand and under the guise of "rehabilitation" proceeds to testify as to the credibility of the child/witness. To allow such testimony is to permit the unlawful usurpation of the credibility-finding function of the jury. This strikes at the heart of our system of justice.

We would have reached our conclusion at bar if any Commonwealth witness presumed to give his or her personal opinion as to the veracity of another witness; we note, however, that our conclusion is augmented because Ms. Wiley was called as an expert. An expert witness, who has been introduced to the jury as possessing a specialized skill

or knowledge in the field in which he is about to testify, certainly has more influence over a jury than a lay witness. *See Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976); *see also Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986). Here, Ms. Wiley was introduced by the Commonwealth as "an expert in family therapy in dealing with abused, sexually abused children." She testified that she has a Master's degree in counseling with a specialty in family therapy, and she currently has forty clients and "between one-third and one-half of those clients are sexually abused." Certainly, the members of the jury who have had no contact or association with sexually abused children will be more prone to defer to the knowledge and experience of an expert such as Ms. Wiley than to a witness without experience in dealing with such children. *See O'Searo,* 466 Pa. at 229, 352 A.2d 30; *Commonwealth v. Hoyman,* 385 Pa.Super. 439, 561 A.2d 756 (1989). Accordingly, we find that Ms. Wiley's opinion testimony as to the child's ability to "in character" tell the truth was prejudicial to Smith, and that counsel was ineffective for failing to object to its introduction.[1]

Order affirmed.

TAMILIA, Judge, dissenting:

I respectfully dissent from the majority's affirmance of the Order of the trial court awarding appellee a new trial.

---

1. We further note that the Commonwealth's expert witness, Ms. Wiley, explicitly compared the general behavioral characteristics of sexually abused children to the specific behavioral characteristics displayed by the child at bar following the alleged incidents. Additionally, Ms. Wiley testified that a child of seven years old is able to separate truth from reality. All of this testimony encroaches upon the credibility-finding function of the jury and is clearly prohibited by recent Pennsylvania Supreme and Superior Court caselaw. *See Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988); *Commonwealth v. Davis,* 518 Pa. 77, 541 A.2d 315 (1988); *Commonwealth v. Dunkle,* 385 Pa.Super. 317, 561 A.2d 5 (1989); *Commonwealth v. Emge,* 381 Pa.Super. 139, 553 A.2d 74 (1988).

These cases were all filed subsequent to Smith's trial. Because counsel shall not be deemed ineffective for failing to predict new law, *Commonwealth v. White,* 515 Pa. 348, 528 A.2d 596 (1987), we shall not find counsel ineffective for failing to object to this additional expert testimony.

The Commonwealth appeals an Order dated November 14, 1988 which granted appellee-defendant Harold W. Smith, Jr., a new trial. Appellant was convicted by a jury on November 18, 1987 of indecent exposure, 18 Pa.C.S. § 3127, and corruption of minors, 18 Pa.C.S. § 6301, for incidents which occurred in October and November of 1984 between him and his then seven year old step-daughter. At trial, the Commonwealth presented testimony of a family therapist who counseled the victim during the nine month period after the alleged incidents. The counselor, Ms. Wiley, was employed by Northumberland County Counseling Services. Ms. Wiley was asked on direct examination whether she had "an opinion as to [the child's] ability to in character tell the truth" (T.T. 11/18/87, p. 78).[1] She then offered an opinion as to the child's character for telling the truth, without any objection being lodged by the defense counsel. Supplemental post-verdict motions filed by appellant after withdrawal of his original trial counsel raised as an issue the ineffectiveness of trial counsel's representation because of her failure to object to the expert's opinion as to the veracity or credibility of the child victim. The trial court then issued the Order in question, basing its grant of the motion for new trial on the above allegation of ineffectiveness of counsel and the cases of *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986), and *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988). Subsequently, the Commonwealth timely filed this appeal.

Appellant argues the court erred in granting a new trial because the witness' testimony did not infringe upon the fact finder's obligation to determine the credibility of witnesses, and the introduction of testimony regarding the victim's character for truthfulness was, in any event, harmless.

In *Commonwealth v. Thek*, 376 Pa.Super. 390, 546 A.2d 83 (1988), a claim was made that defense counsel was

---

**1.** The Commonwealth's brief at page 5 suggests the question was actually if she had "an opinion as to [the child's] ability to *and* character *to* tell the truth." The difference in words is not critical to my position.

ineffective in introducing the report of the Commonwealth's expert and placing before the jury the Commonwealth's expert's opinion that the minor victim's account of continuing sexual abuse was credible. In *Thek*, we reviewed the requirements an appellant must meet in order to establish a claim of ineffectiveness, stating the following:

> [A]ppellant must establish that: by act or omission counsel was arguably ineffective; counsel's act or omission could not have had a reasonable basis designed to effectuate appellant's interests; and appellant was prejudiced by the act or omission in that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different. *Commonwealth v. Petras*, [368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987)]; *see also Commonwealth v. Pierce*, 515 Pa. 153, 159–60, 527 A.2d 973, 975–76 (1987).

*Thek, supra*, 376 Pa.Super. at 396, 546 A.2d at 87 (footnote omitted). We found that the expert involved in that case had exceeded the permissible bounds of testimony by an expert in a child sex abuse case by specifically stating the victim was credible, because such testimony "invaded the province of the jury by presuming to pass directly upon the veracity of the witness." *Id.*, 376 Pa.Superior Ct. at 391, 546 A.2d at 83.[2] Accordingly, we concluded in *Thek* that counsel had been ineffective because there was no objectively reasonable basis for permitting the admission of the

---

**2.** This holding is consistent with that of most jurisdictions throughout the country. *See Thompson v. Alaska*, 769 P.2d 997 (Alaska App.1989) (an expert witness may not give a direct opinion on the truthfulness of a child); *People v. Gaffney*, 769 P.2d 1081 (Colo.1989) (witness may not offer an opinion that a child was very believable); *Tingle v. State*, 536 So.2d 202 (Fla.1988) (in rejecting expert testimony on credibility the court writes "[i]t was error for the state's witnesses to directly testify to the truthfulness of the victim"); *State v. J.C.E.*, 767 P.2d 309 (Mont.1988) (the court writes that as a general rule, expert testimony evaluating the credibility of a witness is inadmissible. Where a child witness is a victim and testifies, under *State v. Geyman*, 224 Mont. 194, 729 P.2d 475 (Mont.1986), an exception is made); *State v. Eidredge*, 773 P.2d 29 (Utah 1989) (an expert may not offer an opinion on the truthfulness of a child); *State v. Madison*, 53 Wash.App. 754, 770 P.2d 662 (1989) (an expert may not offer an opinion that a child was truthful; however, *expert testimony is permissible to rehabilitate credibility* ).

opinion testimony of the expert, and the testimony was prejudicial to appellant because the child-victim's credibility was essential to the Commonwealth's case. Whether or not the claim of ineffectiveness of counsel will stand is dependent in this case on whether the testimony of the expert was admissible.

*Thek* purports to follow *Seese, supra,* which held that an expert may not be permitted to testify as to the credibility of children, as a class, who have been subject to sexual abuse, as this encroaches on the province of the jury. *Seese* also said expert opinion testimony is proper only where formation of an opinion on a subject requires knowledge, information or skill beyond what is possessed by the ordinary juror. *Id.* 512 Pa. at 442, 517 A.2d at 921. Where the question is one of whether a particular witness is testifying in a truthful manner, it must be answered in reliance upon inferences drawn from the life experiences and knowledge of the jurors, as well as the observation of the character and demeanor of the witness. *Seese* goes on to say, "[a]lthough opinion evidence is not to be permitted on the issue of a witness' credibility, there remains, of course, all of the traditional methods for developing or attacking a witness' credibility." *Id.,* 512 Pa. at 444, 517 A.2d at 922.

The law regarding testimony by an expert relating to the capacity of a child witness to tell the truth in an abuse case is clearly stated and follows a distinct pattern in Pennsylvania and a majority of the jurisdictions throughout the nation. Expert testimony in sexual abuse cases frequently relates to bolstering the credibility of child sexual abuse victims by describing behavior of sexually abused children, similar to that exhibited by the victim in the case, or by confirming, through recitation of reports and studies, the general reliability of victim reports of sexual abuse.

The general rule is, as stated in *Seese, supra,* that an expert witness may not present testimony as substantive evidence which establishes sexual abuse based on the behavioral pattern of the child. In *Commonwealth v. Baldwin,* 348 Pa.Super. 368, 502 A.2d 253 (1985), this Court equated the "sexual abuse syndrome" with the "battered

child syndrome" and the "battered wife syndrome" as a basis for introducing expert testimony as substantive evidence having probative value as to the occurrence of the sexual abuse. The better reasoning accepted by the majority of the nation's jurisdictions is that the child abuse syndrome has been documented whereas the sexual abuse accommodation syndrome has not, based on the test for admission of expert testimony announced in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923).

In an article, "The Child Sexual Abuse Accommodation Syndrome", 7 Child Abuse & Neglect 177 (1983), Dr. Roland Summit described the five characteristics commonly observed in sexually abused children:

1) Secrecy;

2) Helplessness;

3) Entrapment and accommodation;

4) Delayed, conflicted and unconvincing disclosure; and

5) Retraction

This syndrome does not diagnose and is not a test for sexual abuse. *See People v. Bowker*, 203 Cal.App.3d 385, 249 Cal.Rptr. 886 (1988); *People v. Gray*, 187 Cal.App.3d 213, 231 Cal.Rptr. 658 (1986). With the battered child syndrome, one reasons from the type of injury to cause for the injury. It has probative value to establish the cause as arising out of neglect or physical assault as opposed to accident. With sexual abuse more often than not, no visible evidence of injury exists, and in the sexual abuse accommodation syndrome, one reasons from behavioral characteristics observed in *some* but *not all* sexually abused children as probative of the existence of sexual abuse. Thus it has properly been held that this syndrome may not be used as substantive evidence and probative of sexual abuse.[3]  In

---

**3.** We must distinguish between the above class of testimony, which relies on behavioral characteristics, and expert medical testimony that offers proof that a child was sexually abused and relies in part on her testimony but is supported by a physical examination that confirms penetration, which might include the use of a colposcope (an instrument which provides low-power magnification, akin to binoculars, to aid in detecting subtle signs of genital injury). *See People v. Mendi-*

*Baldwin, supra,* the court held there is logical relevance as a substantive matter, allowing direct testimony by an expert as to sexual abuse based on the sexual abuse syndrome. In *Commonwealth v. Pearsall,* 368 Pa.Super. 327, 534 A.2d 106 (1987), while this Court found no conflict between *Seese* and *Baldwin,* it went on to say that *Seese* permits admission of testimony by an expert that supports credibility of a witness inferentially because it is consistent with behavior of victims of sexual abuse as a class, while denying it if it presumes to pass directly upon the veracity of a particular witness. *Pearsall* 368 Pa.Super. at 331, 534 A.2d at 109 n. 1. This statement is in error to the extent that it supports use of psychological observations simply to establish the credibility of children complaining of sexual abuse and therefore that the child being examined is telling the truth. *See Seese* and *Davis, supra,* and *Kozak v. Struth,* 515 Pa. 554, 531 A.2d 420 (1987). This goes beyond the permissible scope of expert testimony and invades the province of the jury. As stated above, the child sexual accommodation syndrome does not diagnose sexual abuse. At best, in some jurisdictions, expert testimony is admissible in rebuttal to show that the child's symptoms and behavior are consistent with sexual abuse, or that the child probably experienced age-inappropriate sexual contact. Many jurisdictions permit expert testimony in rebuttal to show why children delay reporting sexual abuse.[4]

*bles,* 199 Cal.App.3d 1277, 245 Cal.Rptr. 553 (1988). The latter is admissible whereas the former is not.

**4.** The great majority of courts approve such expert rebuttal testimony. *See, e.g., State v. Davis,* 422 N.W.2d 296 (Minn.Ct.app.1988) (court approves expert testimony to inform jury that running away from home is common in sexually abused adolescents); *State v. Bailey,* 89 N.C.App. 212, 365 S.E.2d 651, 655 (1988) (expert could state why child would continue to cooperate with abuser); *People v. Bowker,* 203 Cal.App.3d 385, 249 Cal.Rptr. 886, 891 (1988) (child sexual abuse accommodation syndrome testimony admitted to explain delay); *People v. Hampton,* 746 P.2d 947 (Colo.1987) (adult rape victim; rape trauma syndrome admitted to explain delay); *Wheat v. State,* 527 A.2d 269 (Del.1987); *People v. Matlock,* 153 Mich.App. 171, 395 N.W.2d 274, 277 (1986); *State v. Sandberg,* 406 N.W.2d 506, 511 (Minn.1987); *Smith v. State,* 100 Nev. 570, 688 P.2d 326, 326–27 (1984); *People v. Benjamine R.,* 103 A.D.2d 663, 481 N.Y.S.2d 827, 831–32 (1984); *State v. Hicks,* 148 Vt. 459, 535 A.2d 776, 777 (1987); *State v. Petrich,* 101

In two cases, this Court appears to have gone in diverse directions in determining the admissibility of an expert's testimony which would tend to bolster the child's credibility as to his ability to understand or articulate matters relating to the abuse and to differentiate from fantasy, despite his age. In *Commonwealth v. Emge,* 381 Pa.Super. 139, 553 A.2d 74 (1988) (Brosky, J., dissenting), a panel of this Court held such expert testimony is inadmissible as bolstering the credibility of the alleged victim and thereby invading the province of the jury. This holding was followed in *Commonwealth v. Gibbons,* 383 Pa.Super. 297, 556 A.2d 915 (1989). In *Pearsall, supra,* this Court held an expert witness could testify as to the mental and verbal capacity to verbalize and not fantasize the extent of incest and child sexual abuse based on observations and testing done on the child. Since the line of cases evolving in Superior Court presents conflicting views, we need to return to the pronouncements of the Supreme Court on these issues for guidance.[5]

From the holding in *Seese,* it appears the testimony by Dr. Wiley was admissible, as rehabilitative or rebuttal testimony *after* the child had been cross-examined and her veracity brought into question. Prior to the expert's testimony, the child victim testified and had been cross-examined by appellant's attorney. The cross-examination, while not harsh, did test the child's credibility as to the time of occurrence, her recollection of the event forming a basis of the charges, her reasons for not reporting the incidents

Wash.2d 566, 683 P.2d 173, 179–80 (1984); *Scadden v. State,* 732 P.2d 1036, 1046 (Wyo.1987).

*But see Dunnington v. State,* 740 S.W.2d 896 (Tex.Ct.App.1987) (delay in reporting not beyond ken of lay jurors, therefore, expert testimony not needed).

Expert testimony is admissible to explain why children recant. *See, e.g., State v. Lindsey,* 149 Ariz. 472, 720 P.2d 73, 75 (1986).

5. While those cases do not effect the disposition of this case, since the issue here is a much narrower one which turns on basic rules of evidence as to rehabilitation of a witness from personal knowledge, it appears that a total review of this area of the law by our Supreme Court is needed when viewed against the rapidly developing law throughout the United States.

promptly and her knowledge of terms used and how she acquired this. Dr. Wiley's testimony, admission of which formed the basis for grant of a new trial, was specific to her experience with and actual knowledge acquired by reason of 20 or more interviews with the child over a period of nine months, as to the child's character for telling the truth. This knowledge was acquired by discussions with the child and verifying the veracity and accuracy of her statements from her parents, grandparents and others.

Dr. Wiley testified in response to the prosecutor's question as follows:

Q. And, you have known Jill now for—

A. Two years.

Q. Two years. And, do you have an opinion as to her ability to in character tell the truth?

A. Yes, she is—*she has the character which can tell the truth in the sense that if she would be talking*—whether she was talking about school or she would be talking about events just in the family, *when I would check those facts then with her mother or with her grandmother I would then learn the same facts from that parent.*

T.T. at 78 (emphasis added). Had the question been posed and the answer been given prior to cross-examination of the child by defense counsel, it would have been improper as character testimony when character was not in issue. After cross-examination by defense counsel, the child's character for truth telling was in issue.[6]

---

**6.** The majority holds this testimony was not admissible as invading the sacred province of the jury. This ignores the entire thrust of the law evolving toward providing a more even playing field for children of sexual abuse who must testify in court. The cases and evidentiary rules cited by the dissent are irrelevant to the present consideration. An adult on the witness stand has a far greater capacity to withstand cross-examination than a child. What may be a child's limited knowledge of terminology, inability to be time or event specific, or capacity to respond in a court environment can appear to a jury to be flaws in character or credibility. The law and the courts must and increasingly are sensitive to this inherent disability of child witnesses.

Here, the testimony in question was directed toward the child's general character (reputation) for telling the truth and is therefore

admissible. In children cases, other than obtaining evidence from counselors, teachers or family members, it can be very difficult to obtain reputation evidence because of limitations on their activities in the community. A child of three has no peers in the legal sense and little ability to acquire a reputation in the community. A common sense approach must apply in establishing character or reputation. This can only be produced by adults such as parents, relatives, teachers and counselors who had opportunity to be with the child and observe her. The dissent's concern for the sacred domain of the jury is commendable but an equally important consideration is a fair trial for the child victim of sexual assaults. The dissent's position simply weighs the balance in favor of the defendant. Since the Commonwealth may never present evidence showing the character or reputation of the victim in its case in chief, *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1970), it may present such evidence in rebuttal if it has been attacked by the defendant. *Commonwealth v. Castellana*, 277 Pa. 117, 121 A. 50 (1923). "Clear examples of what is proper rebuttal include: ... evidence rehabilitating the witness of the party with the burden of proof after the defendant has produced evidence in his case impeaching the credibility of those witnesses[.] Pennsylvania Trial guide, Rebuttal § 8.1, citing *Risbon v. Cottom*, 387 Pa. 155, 160–62, 127 A.2d 101, 104–5 (1956). Under our adversary system of trials, the opponent must be given an opportunity to meet the attack by evidence sustaining or rehabilitating the witness. One general principle operative under both case law and the Federal Rules of Evidence is that in the absence of an attack upon credibility, no sustaining evidence is allowed. A second truism is that when there has been evidence of impeaching facts, the proponent may bring contradictory evidence asserting the untruth of the alleged impeaching facts. *Such a denial is always relevant and generally allowable.* (Emphasis added). McCormick on Evidence, Third Edition § 49, *Supporting the Witness.*

Pennsylvania case law and the hornbooks and treaties follow uniformly the Federal Rules of Evidence 608(a), Opinion and reputation evidence of character, which states:

> The credibility of a witness may be ... supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Dr. Wiley's testimony was entirely proper and in conformity with the above principles.

The Pennsylvania Legislature has paid particular attention to the unique handicaps of child victims and witnesses in criminal proceedings. In its Declaration of Policy, 42 Pa.C.S. § 5981, the legislature states:

> In order to promote the best interests of the children of this Commonwealth and in recognition of the necessity of affording to children who are material witnesses to or victims of crimes additional consideration and different treatment from that of adults, the General Assembly declares its intent, in this subchapter, to provide these children with additional rights and protections during their

Under these circumstances, Dr. Wiley had actual knowledge of the child's character and could testify in rebuttal and for rehabilitative purposes. This does not violate the rule established by *Seese* and is one of the accepted traditional methods referred to therein, to be utilized when character or credibility come into play. Dr. Wiley's testimony did not enter the mine field of suspect expert testimony concerning the child sexual abuse accommodation syndrome discussed above, which attempts to match behavior of child abuse victims to other abuse victims in order to bolster their credibility. Here, she testified as to her knowledge of the child's truthfulness when her character was called into question. This does not deprive the jury of its opportunity to ultimately make the determination of credibility as such evidence from expert or lay witnesses has always been admissible. In this instance, the statements of Dr. Wiley are not admissible because she is an expert but rather as a person with direct knowledge and experience with the witness to be able to reliably report as to her character.

For the above reasons, I believe the Commonwealth's position is correct and should be sustained. I would vacate the Order of the trial court granting a new trial, reinstate the jury verdict and remand the case for sentencing.

involvement with the criminal justice system. The General Assembly urges the news media to use restraint in revealing the identity or address of children who are victims of or witnesses to crimes. It goes on to provide for children under 14, and a rebuttable presumption in favor of children 14 to 15 years, that support services are required, video taping of depositions in lieu of direct testimony in court is permissible or testimony at trial by closed-circuit television, in addition to other protective measures.

The majority, rather than recognizing the special hardships to children in criminal proceeds, denies protections of the law afforded to every adult. The child in this case is twice victimized by the majority's approach.