J-A17024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JESSE SPOERRY | : | |
| | : | |
| Appellant | : | No. 2206 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 22, 2019
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0001802-2018

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 12, 2021**

Appellant, Jesse Spoerry, appeals *nunc pro tunc* from the judgment of sentence entered in the Monroe County Court of Common Pleas, following his jury trial convictions for two counts of aggravated assault, one count of burglary, two counts of simple assault, and one count of possession of an instrument of crime.[1]  For the following reasons, we vacate and remand for resentencing without imposition of any mandatory minimum sentence, remand with instructions regarding the trial court's analysis concerning the proffered third-party guilt evidence, and affirm in all other respects.

The trial court opinion set forth the relevant facts of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 3502(a)(1)(i), 2701(a)(1), and 907(a), respectively.

On July 24, 2018, Mary Johnson ("Johnson") and Korryn Suprys ("Suprys") were sleeping on a pullout bed in Johnson's home when an intruder attacked them both with an object like a baseball bat or pipe. They went to bed around 9:30 or 10. Next Johnson remembers, the attacker struck her in the legs while screaming "you fucking bitches, how could you do this to me, you fucking bitches?" Suprys awoke to Johnson screaming for help and was hit around her right eye, knocking her unconscious. Her eye swelled shut. Meanwhile, Johnson jumped away, tripping on the bed, and she "flew" out the front door, hoping a neighbor would hear her scream. The attacker followed her outside and continued to beat her on the head, arms, and back. Suprys walked to the bathroom where she saw blood covering her face and the side of her head "crumpled together." Johnson followed a trail of blood to meet Suprys in the bathroom, saying "look what Jesse [(Appellant)] did to my ear." Johnson then helped her off the toilet and took her to lie down.

Responding to the scene after Johnson called 911, Detective Earl Ackerman of the Pocono Township Police Department found her standing in the entranceway with "a lot of" blood on her head and body. Suprys was seated on the edge of the couch they used as a bed. Blood covered the couch. He found a blood trail leading to the bathroom and a significant amount of blood in the bathroom itself. Detective Ackerman observed cast-off on the walls and ceiling around the bed, consistent with a bloodied object being swung.

The victims both spent three days in the hospital. Johnson received treatment for a concussion with loss of consciousness, lacerations to the scalp, a broken collarbone, and fractures in her arm, wrist, thumb, and hand. Suprys experienced facial and skull fractures and had an epidural hematoma and concussion. At the time of trial, she continued to experience recurrent headaches and pain in her ear and shoulder.

They both identified [Appellant] as the assailant by his face, voice, body structure, and shoes. Johnson testified that she saw him standing by the bed holding a bat in the glow of a "bug light" on the front porch that lit him "like a glow worm." Suprys also remembered Johnson say "Jesse, what the fuck

- 2 -

are you doing?" The message dispatching Detective Ackerman to the scene reported Johnson's ex-boyfriend as the possible assailant, indicating the 911 caller had identified him. Suprys could also recognize [Appellant's] voice while he screamed at them, as she knew him as Johnson's ex-boyfriend, [and] Johnson identified [Appellant] by the shoes she bought for him at a [buy]-one-get-one sale at The Crossings outlet stores. Suprys could only see the assailant from the waist down but believed she could recognize the build of his lower body. Another witness, Johnson's neighbor Meghan Serfass, saw [Appellant]'s car driving toward the crime scene between 10:30 and 10:45 while she stood outside smoking a cigarette. She identified a photo of the car as the one belonging to [Appellant] at trial. She could recognize the car as a Honda Civic with black detailing on the side and a fire extinguisher in the passenger-side window.

\* \* \*

Pocono Township Detective James Wagner reconstructed [Appellant]'s movements on the day of the crime, using geographical information of the cell towers accessed by [Appellant]'s phone and the internal GPS location data recorded by the phone itself. [The court] qualified Detective Wagner as an expert in cell data analysis and mapping, and he testified as follows. Between 9:40 and 10:05 P.M., [Appellant] left his home and then moved in a southerly direction toward the crime scene. He arrived in that vicinity at or after 10:32 P.M. By 11:12 P.M., he ha[d] begun to travel away east, toward New Jersey. Johnson called 911 at 11:02. Detective Wagner testified to a reasonable degree of expert certainty that [Appellant]'s phone was in the area of the crime at the time the assault occurred.

\* \* \*

(Trial Court Opinion, filed January 20, 2020, at 2-6) (internal record citations omitted).

On July 18, 2019, a jury convicted Appellant of the above-mentioned crimes, but found Appellant not guilty of two counts of attempted criminal

homicide and two counts of terroristic threats. On August 2, 2019, the Commonwealth filed notice of its intent to seek mandatory sentencing pursuant to 42 Pa.C.S.A. § 9714 (sentences for second and subsequent offenses of crimes of violence), and Appellant filed his motion to preclude imposition of a mandatory minimum sentence on that same day. On October 22, 2019, the court denied Appellant's motion, and it sentenced Appellant to an aggregate of 20 to 40 years' incarceration. Appellant filed an untimely appeal, which this Court quashed on June 15, 2020. *See Commonwealth v. Spoerry*, No. 3418 EDA 2019 (Pa.Super. filed June 15, 2020).

Nevertheless, the court granted Appellant's subsequent request for reinstatement of his direct appeal rights *nunc pro tunc* on November 13, 2020. Appellant timely filed his notice of appeal *nunc pro tunc* on November 16, 2020. The next day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal; Appellant timely complied.

Appellant raises seven issues for our review:

> 1. Whether the [c]ourt erred when it ruled that Appellant could not cross-examine Koryn Suprys, one of the alleged victims, based upon her medical records and statements from those records?

> 2. Whether the [c]ourt erred when it ruled that Appellant could not cross-examine…a member of one of the victims' families, on whether she and her mother had received threats from another family and were in a dispute with them?

> 3. Whether the [c]ourt erred when it ruled that Appellant could not cross-examine Mary Johnson, one of the alleged victims, about various incidents of threats, sexual assault

- 4 -

against her daughter, and other suspicious behavior which she had reported to police?

4. Whether the [c]ourt erred when it admitted text messages as properly authenticated, despite the holding in [*Commonwealth v. Mangel*, 181 A.3d 1154 (Pa.Super. 2018)], where the text messages were merely somewhere in Appellant's cellular phone?

5. Whether the [c]ourt erred when it failed to allow Appellant to present reputation evidence through Susan Buchan on the basis that the shopping center businesses amongst which Mary Johnson worked on a daily basis were not a relevant community to assess her reputation for truthfulness?

6. Whether the [c]ourt erred in failing to instruct the jury to receive the testimony of the victims "with caution" through the 'accuracy in doubt' instruction because the victims had equivocated and given conflicting statements on whether they were able to see, hear, and identify Appellant and whether they even remembered the incident?

7. Whether the [c]ourt erred in sentencing [Appellant] to mandatory minimum terms under 42 Pa.C.S.A. § 9714 because Appellant's prior Burglary conviction was not a 'crime of violence' for purposes of the statute?

(Appellant's Brief at 5-7).

In Appellant's first three issues, he alleges that the court abused its discretion by prohibiting him from cross-examining three different Commonwealth witnesses. When reviewing the admission or exclusion of evidence, our standard of review is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm. Not merely an error in judgment, an abuse of discretion

- 5 -

occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). Our scope of review in cases where the trial court explains the basis for its evidentiary ruling is limited to an examination of the stated reason. *Commonwealth v. Stephens*, 74 A.3d 1034, 1037 (Pa.Super. 2013). "We must also be mindful that a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." *Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004).

A trial court has broad discretion to limit the scope of cross-examination, and rulings doing so will not be reversed absent an abuse of discretion. *Commonwealth v. Birch*, 532 Pa. 563, 566, 616 A.2d 977, 978 (1992).

> Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish the witness' motive for testifying. A witness may be cross-examined as to any matter tending to show the interest or bias of that witness. It is particularly important that, where the determination of a defendant's guilt or innocence is dependent upon the credibility of a prosecution witness, an adequate opportunity [must] be afforded to demonstrate through cross-examination that the witness is biased.

*Commonwealth v. Hyland*, 875 A.2d 1175, 1186 (Pa.Super. 2005), *appeal denied*, 586 Pa. 723, 890 A.2d 1057 (2005). Nevertheless, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also

- 6 -

harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013).

In Appellant's first issue, he argues that the court improperly prohibited him from cross-examining Suprys concerning her statements contained in a medical record indicating that Suprys had blurry vision. Appellant asserts the court should have permitted him to cross-examine Suprys about the statements contained within that record as a prior inconsistent statement. Appellant emphasizes that the statement regarding Suprys' blurry vision demonstrated that she was not credible because it called into doubt her ability to identify Appellant as her attacker. Appellant concludes the court's evidentiary ruling was erroneous, and this Court must reverse and remand for a new trial. We disagree.

"A written report which is only a summary of the words of the victim and not verbatim notes from the victim cannot be used to impeach the witness on cross-examination[.]" *Commonwealth v. Simmons*, 541 Pa. 211, 245, 662 A.2d 621, 638 (1995), *cert. denied*, 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996). "The rationale for this rule is that it would be unfair to permit impeachment of a witness through the use of [another person's] interpretation of what the witness said, rather than what the witness said verbatim." *Commonwealth v. Bailey*, 469 A.2d 604, 612 (Pa.Super. 1983).

Instantly, defense counsel attempted to cross-examine Suprys about

medical records that had not been admitted into evidence, as a purported prior inconsistent statement. The following exchange occurred:

> [THE COMMONWEALTH]: These are not the medical records that I entered into evidence.
>
> THE COURT: Okay.
>
> [THE COMMONWEALTH]: You were given the ones that were entered into evidence. These are not the ones that I entered. There may have been multiples, but these are not the ones that I entered.
>
> [DEFENSE COUNSEL]: Okay. I won't introduce them. I'll withdraw them.
>
> THE COURT: All right. Let's move on.
>
> [DEFENSE COUNSEL]: Defense withdraws those, Judge.
>
> THE COURT: Thank you.
>
> [DEFENSE COUNSEL]: Ms. Suprys, you wear glasses, correct? Or contacts?
>
> [WITNESS SUPRYS]: Sometimes.
>
> [DEFENSE COUNSEL]: Okay. And you have blurry vision without that, correct?
>
> [WITNESS SUPRYS]: No.
>
> [DEFENSE COUNSEL]: So if you had indicated that you have blurry vision, then, to the hospital—
>
> [THE COMMONWEALTH]: Objection. Your Honor.
>
> THE COURT: We're going to sustain that objection.
>
>                \*     \*     \*

(N.T. Trial, 7/16/19, at 110-11).

Here, the record makes clear that Appellant voluntarily withdrew his request to enter into evidence the medical records he sought to use for impeachment purposes. *Id.* at 111. Thus, Appellant has waived any complaint on appeal concerning the court's exclusion of that medical record. *See Commonwealth v. McGriff*, 160 A.3d 863 (Pa.Super. 2017), *appeal denied*, 644 Pa. 372, 176 A.3d 853 (2017) (reiterating well-settled law that party must make timely and specific objection at trial, and failure to do so results in waiver of that issue on appeal). Further, the court correctly prohibited Appellant from impeaching Suprys with a medical report which contained a summary of what Suprys said rather than her verbatim statements. *See Simmons, supra*; *Bailey, supra*. On this record, we see no reason to disrupt the court's evidentiary ruling. *See Birch, supra*.

In Appellant's second issue, he argues that the court abused its discretion by prohibiting him from cross-examining Johnson's daughter, O.J.,[2] on threats that O.J. and her mother received from a third party. Appellant alleges that the court sustained an objection to his question to O.J. about whether a third-party said "Karma is coming your way for what you [O.J.] and your mother did to my brother, you liars." (*See* Appellant's Brief at 27). Appellant insists this question was vital to show motive on the part of another

---

[2] This Court will use initials for this witness, who was only 15 years old at the time of the trial. (*See* N.T. Trial at 167).

attacker. Appellant concludes the court's evidentiary ruling was improper, and this Court must reverse and remand for a new trial. We disagree.

In **Commonwealth v. Newman**, 555 A.2d 151 (Pa.Super. 1989), this Court explained that the party making an offer of proof waives any grounds other than those actually presented for the trial court's consideration:

> An offer of proof must be sufficient to alert the trial judge to the purpose for which the evidence is being offered, and a trial court's exclusion of evidence must be evaluated on appeal by a review of the contents of the offer at the time it was made. The party specifying the purpose for which the testimony is admissible cannot argue on appeal that the evidence was admissible for a purpose other than that offered at trial. Appellant is deemed to have waived any grounds, other than those offered at trial, for the admission of the evidence at trial.

**Id.** at 156 (citations omitted).

Instantly, Appellant claimed at trial that evidence of the threat against O.J. and her mother was admissible as a "statement against penal interest." (**See** N.T. Trial at 191). On appeal, however, Appellant now asserts the proffered evidence was admissible to establish "motive on the part of another attacker." (**See** Appellant's Brief at 27). Because Appellant did not preserve this theory of admissibility before the trial court, this claim is waived on appeal. **See Newman, supra**. **See also** Pa.R.A.P. 302(a) (stating issues not raised in trial court are waived and cannot be raised for first time on appeal).

In Appellant's third issue, he argues that the court erred by prohibiting him from cross-examining the victim, Johnson, about three separate incidents. Appellant alleges that the first incident occurred in February of

2018, when Johnson called police after observing three individuals sitting in a parked car outside her home. Appellant contends the second incident occurred in April of 2018, when Tracy VanWhy threatened Johnson because Johnson's daughter, O.J., reported that John VanWhy sexually assaulted her. According to Appellant, Tracy threatened Johnson because Tracy claimed that O.J. lied about the sexual assault. The third incident occurred in May of 2018, when Johnson notified police that someone named Mr. Labar had entered her home without permission. Appellant suggests that each of these incidents was relevant and admissible to establish knowledge, intent and identity concerning other potential suspects who could be responsible for the assault at issue in this case. Appellant submits that the introduction of "third person guilt" evidence should not be governed by the admissibility requirements under Pa.R.E. 404(b), concerning introduction of crimes, wrongs, or other bad acts. Appellant concludes that the court abused its discretion by prohibiting cross-examination on these three incidents, and this Court must reverse and remand for a new trial. We agree that some relief is due.

Pennsylvania has historically recognized a defendant's right to present evidence that someone else committed the crime of which he is accused. *See Commonwealth v. Ward*, 529 Pa. 506, 605 A.2d 796 (1992) (reiterating defendant has fundamental right to present evidence of third person's motive, provided evidence is relevant and not subject to exclusion under established evidentiary rule). *See also Commonwealth v. Boyle*, 470 Pa. 343, 368

A.2d 661 (1977) (explaining that evidence of third person's motive need only support inference that accused did not commit the crime).

Recently, the Pennsylvania Supreme Court clarified the appropriate standard for the admission of evidence of "third person guilt" when offered by a criminal defendant to show he was not the perpetrator of the crime charged. *See Commonwealth v. Yale*, ____ Pa. ____, 249 A.3d 1001 (2021). In *Yale*, United States Marshals went to the home of the defendant's mother where the defendant resided to serve an arrest warrant on Larry Thompson. *Id.* at ____, 249 A.3d at 1005. While searching the residence for Thompson, an officer entered the defendant's bedroom, where he found the defendant, soda bottles containing methamphetamine, and materials commonly used to produce methamphetamine. *Id.* The drug is produced when chemicals are mixed in a plastic soda bottle in a method commonly referred to as the "one-pot" method. *Id.* An officer found Thompson hiding in the defendant's bedroom closet. *Id.* The defendant and Thompson were both charged under principal and accomplice theories of liability. *Id.*

At the defendant's trial, he attempted to prove that the contraband found in his bedroom belonged solely to Thompson. *Id.* The defendant sought to introduce evidence of Thompson's previous arrest and conviction for use of the "one-pot" method to manufacture methamphetamine. *Id.* In analyzing the admissibility of this evidence, the trial court applied a two-part test that included a "signature crime" prong. *Id.* The trial court concluded that

Thompson's prior acts and the current case did not have "such detailed similarities or the same methodology" so as to exonerate the defendant. *Id.* Thus, the trial court prohibited the defendant from introducing this third person guilt evidence, finding it was not probative and likely to confuse the jury. *Id.*

A jury convicted the defendant, and this Court affirmed. In reaching its decision, this Court stated that the defendant failed to demonstrate how Thompson's prior bad acts are so "strikingly similar" to the defendant's charged crimes as to establish Thompson as "the person charged with the commission of the crime on trial." *Id.* at ___, 249 A.3d at 1007.

On appeal to the Supreme Court, our High Court reversed and remanded for further proceedings. In so doing, the Court explained that the lower courts had incorrectly applied the heightened similarity standard for admissibility under Rule 404(b) typically associated with the Commonwealth's use of evidence of defendant's crimes, wrongs or other acts. *Id.* at ___, 249 A.3d at 1014. The Court stated that "bad acts" evidence is admissible against a defendant under Rule 404(b): (1) if a logical connection exists between the bad act(s) and the crime charges; or (2) if the bad acts manifest a signature crimes. *Id.* at ___, 249 A.3d at 1015. Further, Rule 404(b) only permits such evidence if the probative value outweighs its potential for unfair prejudice. *Id.* Nevertheless, those same prejudice concerns are not at play when the evidence is introduced against a third party, rather than the defendant,

because the third person implicated by the defendant's evidence is not facing the possibility of a criminal conviction. *Id.* at ___, 249 A.3d at 1020. The *Yale* Court concluded that determining the admissibility of third person guilt evidence requires nothing more than the traditional inquiries prompted by Rules 401, 402 (governing relevancy and admissibility of relevant evidence) and 403 (inquiring whether the probative value of the third person guilt evidence is outweighed by any danger of confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence). *Id.* at ___, 249 A.3d at 1022. Thus, the *Yale* Court held that "Rules 401 through 403 provide the correct approach for assessing third person guilt evidence. Third person guilt evidence is admissible if it is relevant, not otherwise excludable, and surmounts the disqualifying considerations of Pa.R.E. 403." *Id.* at ___, 249 A.3d at 1023. Because the trial court had used the Rule 404(b) inappropriate framework, the Court remanded for consideration of the evidence under Rules 401-403. *Id.* at ___, 249 A.3d at 1025 n. 27 (stating if court determines third person guilt evidence was admissible under proper standard, defendant would be entitled to new trial; Commonwealth could raise harmless error doctrine before trial court upon remand).

Instantly, the court analyzed Appellant's proffered third-party guilt evidence under Rule 404(b). (*See* Trial Court Opinion at 11-14). Nevertheless, *Yale* makes clear that Rule 404(b) is the incorrect standard to

- 14 -

evaluate the admissibility of third person guilt evidence. *See Yale, supra*. Therefore, we remand for the court to make an appropriate admissibility determination under Rules 401-403, consistent with *Yale*.[3] *See id.* If the court decides the evidence was admissible under Rules 401-403, the Commonwealth may advance the theory of harmless error before the trial court. *Id.*

In Appellant's fourth issue, he alleges that the court abused its discretion when it allowed the Commonwealth to admit various text messages Appellant purportedly sent on his cell phone. Appellant claims that the Commonwealth failed to provide any evidence as to who sent or received these messages. Appellant maintains the Commonwealth introduced these messages simply because they were contained in Appellant's cell phone, without proper authentication. Appellant concludes that the Commonwealth failed to properly authenticate these messages pursuant to Pa.R.E. 901(a), and this Court must reverse and remand for a new trial. We disagree.

Pennsylvania Rule of Evidence 901 requires authentication prior to admission of evidence. *Commonwealth v. Orr*, 255 A.3d 589 (Pa.Super. 2021). The proponent of the evidence must introduce sufficient evidence that

---

[3] We recognize that the trial court did not have the benefit of *Yale* when it ruled on the proffered evidence in this case. Further, to the extent the court also analyzed the evidence under Rules 401-403, the court's analysis under those Rules is somewhat conflated with the analysis under Rule 404. Under these circumstances, the best resolution is to remand consistent with *Yale* so the court can evaluate the proffered evidence using only Rule 401-403.

the matter is what it purports to be. *See* Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. *See* Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). *See* Pa.R.E. 901(b)(4) (providing examples of evidence that satisfies authentication requirement, such as "*Distinctive Characteristics and the Like*: The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances").[4] "Distinctive characteristics" under Rule 901(b)(4) may include information tending to specify an author-sender, reference to or correspondence with relevant events that precede or follow the communication in question, or any other factor or aspects of the communication that signify it to be what its proponent claims. *Commonwealth v. Collins*, 598 Pa. 387, 957 A.2d 237 (2008).

In *Commonwealth v. Koch*, 39 A.3d 996 (Pa.Super. 2011), *affirmed by equally divided court*, 630 Pa. 374, 106 A.3d 705 (2014), the defendant was charged with possession with intent to deliver ("PWID") marijuana both as a principal and accomplice. At trial, Detective Lively testified that a certain

---

[4] Effective October 1, 2020, a new provision of Rule 901 governs the authentication or identification of digital evidence. *See* Pa.R.E. 901(b)(11). Because the trial in this case took place before the Rule's effective date, we decline to apply it herein.

cell phone containing drug-related text messages belonged to the defendant. Nevertheless, the detective conceded that some messages on the phone were authored by others. *Id.* at 1003. Defense counsel objected to the text messages on hearsay and authenticity grounds, but the court overruled the objections. *Id.* at 1000.

Following the defendant's conviction, she appealed to this Court challenging the court's ruling on the authenticity of the text messages. This Court reversed and remanded, explaining that "authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." *Id.* at 1005. In the absence of any evidence tending to substantiate that the appellant had written the drug-related text messages, this Court decided admission of the text messages constituted an abuse of discretion. *Id.* Specifically, this Court found a "glaring" lack of evidence that the defendant wrote the messages:

> No testimony was presented from persons who sent or received the text messages. There are no contextual clues in the drug-related text messages themselves tending to reveal the identity of the sender. In addition to evidence that [the defendant] identified the phone as hers, the trial court relied upon the fact that the cellular phone was found on the table in close proximity to [the defendant]. However, we find [her] physical proximity to the telephone to be of no probative value in determining whether she authored text messages days and weeks before.

*Id.* This Court further concluded that the erroneous admission of the highly

prejudicial electronic communications did not amount to harmless error in the case, and a new trial was warranted. *Id.* at 1007.

An evenly divided Supreme Court affirmed the grant of a new trial. *See Commonwealth v. Koch*, 630 Pa. 374, 106 A.3d 705 (2014). On the subject of authentication, the justices disagreed as to whether authorship of a text message was relevant to the subject of authentication. *Id.* Due to the lack of a majority opinion, the Supreme Court's decision in *Koch* is not binding on us. *Commonwealth v. Wright*, 255 A.3d 542 n.4 (Pa.Super. 2021) (stating: "[b]ecause an equally divided Supreme Court affirmed this Court's grant of a new trial in *Koch*, our Supreme Court's decision is not binding in this case"). Ultimately, "the authentication of text messages turns upon the depth of direct and circumstantial evidence of authorship marshaled by the proponent of the text messages." *Orr, supra* at 601 (holding numerous circumstantial clues demonstrated appellant sent text messages at issue; appellant owned phone, which was found with appellant's other belongings where appellant was apprehended; content of messages indicated appellant wrote them; no evidence suggested that third person had regular access to cell phone, unlike in *Koch*; appellant's challenge to authentication of text messages failed).

The following factors are useful in establishing authentication of text messages: (1) direct or circumstantial evidence as to the identity of who authored the text sent, *see Commonwealth v. Mosley*, 114 A.3d 1072, 1083 (Pa.Super. 2015); (2) testimony from the persons who sent or received

the text messages, *see Mangel, supra* at 1162 (recognizing recipient or sender testimony as direct evidence of authenticity); (3) contextual clues in the texts concerning the crime charged tending to reveal the identity of the sender, *see Commonwealth v. Murray*, 174 A.3d 1147 (Pa.Super. 2017); (4) defendant's possession of the cell phone which contains the text messages, *see id.* at 1157; (5) defendant's admission to owning the cell phone, *see id.*; (6) time and date of messages sent in relation to the crime charged, *see Wright, supra* at 551; (7) any evidence to establish a distinct characteristic of the message, *see Commonwealth v. Talley*, 236 A.3d 42, 60 (Pa.Super. 2020), *appeal granted on other grounds*, ___ Pa. ___, 250 A.3d 468 (2021); and (8) no evidence of a third-party having access to the cell phone, *see Orr, supra* at 601.

Instantly, the trial court stated:

> Beyond ownership of the phone, contextual information from the phone's usage history shows that [Appellant] is the person who continuously controlled it until the time of his arrest, when it was taken from his right hand. The person who had continuous control over the device most likely wrote the messages sent from it while he controlled it. Events in the usage history correspond with [Appellant]'s activities, described by other witnesses, in the time before and after the crime. Finally, a number of internal patterns, references, characteristics, and acknowledgments of [Appellant]'s identity show that [Appellant] communicated through this phone continuously at the times in question.

(Trial Court Opinion at 16).

We agree with the trial court that the Commonwealth properly authenticated the text messages contained in Appellant's cell phone. The

- 19 -

record demonstrates that Appellant owned and possessed the cell phone up to the time of his arrest when it was taken from him. (*See* N.T. Trial, 7/17/19, at 164-65). Significantly, unlike in *Koch*, there were not multiple parties who regularly used the phone; only Appellant did. Further, contextual clues in the texts concerning Appellant's usage and history were relevant to the crime charged. As well, there was evidence of distinct characteristics in the messages, including Appellant's messages concerning his car he had listed for sale. (*See* N.T. Trial at 125-29). Thus, the circumstances surrounding the text messages at issue point only to Appellant, and the court did not abuse its discretion in concluding that the Commonwealth properly authenticated the text messages contained in Appellant's cell phone.[5] *See Orr, supra*.

In Appellant's fifth issue, he alleges that the court abused its discretion when it precluded him from offering bad reputation evidence under Pa.R.E. 608(a). Appellant argues that the court erred by sustaining the Commonwealth's objection to his character witness, Susan Buchan. Appellant claims that he offered Buchan to testify about Johnson's reputation for untruthfulness in the community. Buchan knew of Johnson's reputation based

---

[5] Appellant's reliance on *Mangel, supra* affords him no relief, as those facts are distinguishable from the facts of this case. *See id.* (holding Commonwealth presented **no evidence**, direct or circumstantial, tending to substantiate that defendant created Facebook account in question, authored chat messages, or posted photograph at issue; mere fact that Facebook account bore defendant's name, hometown and high school was insufficient to authenticate online and mobile device chat messages as having been authored by defendant).

on the shopping center where Johnson works. According to Appellant, the trial court incorrectly found that Peddlers Village, the shopping center where Johnson works, did not meet the foundational requirement of a "community" necessary to introduce this testimony. Appellant concludes the court's preclusion of Buchan's character testimony constitutes reversible error, and this Court must grant a new trial. We disagree.

Pennsylvania Rule of Evidence 608 governs the admissibility of character evidence for truthfulness or untruthfulness and provides, in relevant part:

> **Rule 608. A Witness's Character for Truthfulness or Untruthfulness**
>
> **(a) Reputation Evidence**. A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked. Opinion testimony about the witness's character for truthfulness or untruthfulness is not admissible.
>
> *      *      *

Pa.R.E. 608(a).

Further, Pennsylvania Rule of Evidence 405 provides the methods of proving character evidence, in relevant part, as follows:

> **Rule 405. Methods of Proving Character**
>
> **(a) By Reputation**. When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation. Testimony about the witness's opinion as to the character or character trait of the person is not admissible.

Pa.R.E. 405(a).

Character evidence is limited to testimony about a witness's general reputation in the community. *Commonwealth v. Goodmond*, 190 A.3d 1197, 1201 (Pa.Super. 2018). A party seeking to admit character evidence bears the burden of establishing a foundation for that evidence. *Id.* To prove the foundation for reputation evidence, the proponent must establish that the impeaching witness (1) is a member of the same community of the witness to be impeached; (2) is aware of the general reputation of the person in question for the specific character trait; and (3) knows the person has a reputation for dishonesty (or some other relevant trait) in the community. *Commonwealth v. Smith*, 567 A.2d 1080 (Pa.Super. 1989). The decision as to whether the foundation for a valid "community" has been established rests within the discretion of the trial court. *See Commonwealth v. Minich*, 4 A.3d 1063 (Pa.Super. 2010).

Although the term "community" is not expressly defined, several cases have discussed areas which constitute a "community" for the admission of character evidence. For example, a "community" includes a neighborhood where a person lived and was known, as well as a location where a person socializes and moves in the same circles as the character witness. *See Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967); *Commonwealth v. Trimble*, 615 A.2d 48 (Pa.Super. 1992).

Instantly, Appellant attempted to introduce evidence of the victim

Johnson's reputation in the community for untruthfulness. Appellant called Susan Buchan to testify as a character witness concerning Johnson's untruthfulness. (*See* N.T. Trial, 7/18/10, at 27). Buchan testified that she was familiar with Johnson and was also familiar with Peddlers Village where Johnson had a barbershop. (*Id.*) The following relevant exchange occurred during Buchan's testimony:

> [DEFENSE COUNSEL]: And are you - - have you talked to other people in the community about Ms. Johnson's reputation for truthfulness?
>
> [WITNESS BUCHAN]: Yes.
>
> [THE COMMONWEALTH]: Your Honor, can I just ask, what community are we talking about?
>
> THE COURT: Yeah. I haven't - - you're just talking about the Peddlers Village? I mean, I don't know if that's a community. You'd better be more specific [Appellant's counsel].
>
> [DEFENSE COUNSEL]: Is - - Peddlers Village is where Ms. Johnson works, correct?
>
> [WITNESS BUCHAN]: Yes.
>
> [DEFENSE COUNSEL]: Okay. And there's - - are there conversations between the shop owners and other people who frequent [Peddlers] Village, in your experience?
>
> [WITNESS BUCHAN]: Yes.
>
> [DEFENSE COUNSEL]: Okay. And do people in that area know Ms. Johnson and converse with her?
>
> [WITNESS BUCHAN]: Yes.
>
> [DEFENSE COUNSEL]: Okay. And so relevant to that community, that group of people, have you talked to people

about Ms. Johnson's reputation for truthfulness?

[THE COMMONWEALTH]: Your Honor, I still am not sure that's really a community that fits into this.

THE COURT: I'm going to sustain the objection.

[DEFENSE COUNSEL]: Ma'am, have you talked to anyone in the trailer park about Ms. Johnson's reputation for truthfulness?

[THE COMMONWEALTH]: And, Your Honor, again, I'm not sure what her relation to the trailer park is.

THE COURT: Sustain the objection.

[DEFENSE COUNSEL]: If I could try to lay a foundation for that, Judge.

THE COURT: Sure.

[DEFENSE COUNSEL]: Do you know people in the trailer park that Ms. Johnson lives, ma'am?

[WITNESS BUCHAN]: Two people.

[DEFENSE COUNSEL]: Okay. And is that - where is the trailer park in relationship to Peddlers Village?

[WITNESS BUCHAN]: Down the road to the right. This is - -

[DEFENSE COUNSEL]: Okay. And how - -

[WITNESS BUCHAN]: Maybe a half a mile.

[DEFENSE COUNSEL]: How long?

[WITNESS BUCHAN]: Maybe a half a mile, three quarters of a mile, if that.

[DEFENSE COUNSEL]: A half mile?

[WITNESS BUCHAN]:     Roughly.

[DEFENSE COUNSEL]:     Okay.  And with respect to those people in that community, what is Ms. Johnson's reputation for truthfulness?

**[THE COMMONWEALTH]: Your Honor, she's not a part of it - - I'm sorry, of that community.**

THE COURT:     Sustain the objection.  I'm not going to allow it.

[DEFENSE COUNSEL]:     No other questions, Your Honor.

(*Id.* at 28-30) (emphasis added).

Here, although Appellant claims the court excluded Buchan's testimony by failing to classify Peddlers Village as a "community," the record shows that the court disallowed the proffered testimony because Appellant failed to establish that Buchan was also a member of that community.  *See id.*  Thus, Appellant did not meet the foundational requirement necessary to introduce Buchan's testimony.  *See Smith, supra*.  Rather, Buchan merely sought to testify about what she knew **other members** of the community she was not a part of thought of Johnson's reputation for truthfulness.  Notably, when Appellant's counsel called his next witness, Judy Jack, the court permitted her to testify concerning Johnson's reputation for untruthfulness in the Peddlers Village, stating: "Well, there is some case law that supports the proposition that a community may be people who work in a common place or the same place…"  (N.T. Trial, 7/18/10, at 36).  Thus, the court properly admitted testimony from Judy Jack, who was a member of the same community as

Johnson, but excluded testimony from Susan Buchan, who was not. **See Smith, supra**. Consequently, Appellant's fifth issue merits no relief.

In Appellant's sixth issue, he argues that the trial court failed to give the jury the "accuracy in doubt" instruction under Pennsylvania Suggested Standard Jury Instruction (Crim) § 4.07B, referred to as the "**Kloiber** instruction."[6] Appellant asserts the court should have given this instruction because the victims equivocated and gave conflicting statements on whether they were able to see, hear and identify Appellant. Appellant concludes that the court's failure to give this instruction constituted reversible error, and we must reverse and remand for a new trial. We disagree.

Our standard of review of a court's decision to include or omit jury instructions "is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. Baker**, 24 A.3d 1006, 1022 (Pa.Super. 2011), *aff'd*, 621 Pa. 401, 78 A.3d 1044 (2013) (quoting **Commonwealth v. Galvin**, 603 Pa. 625, 651, 985 A.2d 783, 799 (2009), *cert. denied*, 559 U.S. 1051, 130 S.Ct. 2345, 176 L.Ed.2d 565 (2010)). "[Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." **Commonwealth v. Hamilton**, 766 A.2d 874, 878 (Pa.Super. 2001). Further,

---

[6] **Commonwealth v. Kloiber**, 378 Pa. 412, 106 A.2d 820 (1954).

"[t]he trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [a]ppellant was prejudiced by that refusal." ***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa.Super. 2011).

The ***Kloiber*** charge is appropriate,

> where the witness is not in a position to clearly observe the assailant or [s]he is not positive as to identity, or [her] positive statements as to identity are weakened by qualification, or by the failure to identify the defendant on one or more prior occasions, the accuracy of the identifications is so doubtful that the [c]ourt should warn the jury that the testimony as to identity must be received with caution.

***Kloiber, supra*** at 424, 106 A.2d at 826-27. Conversely, "[w]here the opportunity for positive identification is good and the witness is positive in [her] identification and [her] identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution." ***Id.*** at 424, 106 A.2d at 826. Thus, a ***Kloiber*** charge is intended for situations where a witness did not have the opportunity to clearly view the defendant, equivocated in identification, or had difficulty making an identification in the past. ***Commonwealth v. Reid***, 622 Pa. 78, 99 A.3d 427 (2014).

Further, "[a] witness may testify to a person's identity from his voice alone." ***Commonwealth v. Fromal***, 572 A.2d 711, 716 (Pa.Super. 1990). The weight to be accorded voice identification testimony is a question for the trier of fact. ***Id.*** Moreover, evidence of identification need not be positive and

certain to sustain a conviction. *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973).

Instantly, the court explained its reasons for not giving the *Kloiber* instruction as follows:

> The issue of their opportunity to clearly view [Appellant] goes to the lighting issue…. [T]he light may not have bathed the living area, but the [v]ictims consistently maintained that the "bug light" on the front porch and the oven's hood light did allow them to perceive their attacker. [Appellant]'s position in the lines of sight of the kitchen and the porch through the window plausibly would have illuminated a person standing in the corner near the bed. The testimony did not indicate any problem seeing those parts of [Appellant]'s body they did see.
>
> At trial, neither of the [v]ictims questioned herself or vacillated on the identification. Johnson saw [Appellant] standing over the bed holding a bat. Suprys identified [Appellant]'s voice arguing with Johnson before she went to bed, and she remembers Johnson referring to [Appellant] by name. Johnson distinctly remembers him wearing the shoes she bought him. Suprys believes she could recognize the build of [Appellant]'s lower body. At trial, they never doubted their identification and their ability to make their identifications.
>
> They never contradicted each other. Importantly, they both recognized the limits of their ability to identify [Appellant]. Suprys admitted that she could only see him from the waist down and did not see much of him because she was sleeping when he first swung.
>
> Johnson apparently named [Appellant] in her phone call to 911, because dispatch passed this on to officers at the scene. But during the ambulance ride to the hospital, she might have identified a person Anthony Fennel as the attacker. But she had been medicated for the pain of her injuries and possibly sedated at that time, and she expressed regret for this identification. Anthony is a person with disabilities who comes by to feed the dogs and help

out. She doesn't believe he could have had anything to do with it at the time she testified. She does not remember saying this but admits she might have. Throughout cross-examination, Johnson said she could not remember specific things she might have said on the 911 call, to responding officers at the scene, and at the hospital. But she would not say that she has any problem remembering the attack itself.

Other than the possible misidentification in the ambulance, Johnson has not had a problem identifying [Appellant] in the past. Nothing suggests that Suprys had.

(Trial Court Opinion at 21-23) (internal record citations omitted). We agree with the trial court's analysis that a ***Kloiber*** charge was not warranted here. ***See Kloiber, supra***.

In Appellant's seventh issue, he argues that the court erred in imposing a mandatory minimum sentence under 42 Pa.C.S.A. § 9714 (governing sentences for second and subsequent offenses involving crimes of violence). Appellant asserts that the court improperly decided that Appellant's prior burglary conviction in 2012 constituted a "crime of violence" for purposes of Section 9714. Appellant claims that his 2012 guilty plea to burglary indicated that Appellant pled guilty to burglary under 18 Pa.C.S.A. § 3502(a) without specifying a particular subsection of the burglary statute. Appellant avers that burglary under subsection (a)(1) constitutes a "crime of violence" but burglary under subsections (a)(2)-(4) do not. According to Appellant, for a burglary conviction to be deemed a "crime of violence" under subsection (a)(1), the facts of his past burglary conviction would have required Appellant's entry into a building adapted for overnight accommodation where a person was present

at that time. Appellant insists that his 2012 guilty plea did not specify subsection (a)(1), so the court erred by treating this past conviction as a crime of violence. Further, Appellant maintains that any determination regarding whether the mandatory minimum applies would have to be decided by a jury under **Alleyne v. United States**, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) (holding any fact increasing mandatory minimum sentence for crime is considered element of crime to be submitted to fact-finder and found beyond reasonable doubt).[7] Appellant concludes this Court should vacate his sentence and remand for a new sentencing hearing with instructions not to impose a mandatory minimum sentence under Section 9714. We agree.

The scope and standard of review applied to determine the legality of a sentence are well established:

> If no statutory authorization exists for a particular sentence,

---

[7] The trial court declined to address Appellant's **Alleyne** challenge based on his failure to preserve it in his Rule 1925(b) statement. (**See** Trial Court Opinion at 23). Nevertheless, "a challenge to the legality of the sentence can never be waived [assuming jurisdiction is proper,] and may be raised by this Court *sua sponte*." **Commonwealth v. Wolfe**, 106 A.3d 800, 801 (Pa.Super. 2014) (citation omitted). "Generally, a challenge to the application of a mandatory minimum sentence is a nonwaivable challenge to the legality of the sentence[.]" **Commonwealth v. Brougher**, 978 A.2d 373, 377 (Pa.Super. 2009). Thus, we disagree with the trial court's waiver of Appellant's **Alleyne** complaint. **Alleyne** affords Appellant no relief though, because **Alleyne** recognized a narrow exception to its general holding for sentences increased based upon the "fact" of a prior conviction. **See Commonwealth v. Bragg**, 133 A.3d 328 (Pa.Super. 2016), *aff'd*, 642 Pa. 13, 169 A.3d 1024 (2017) (explaining U.S. Supreme Court recognized narrow exception to general **Alleyne** rule for prior convictions; as appellant was sentenced to mandatory minimum under Section 9714 for his prior conviction of crime of violence, his sentencing challenge has no merit).

that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Commonwealth v. Hodges***, 193 A.3d 428, 433 (Pa.Super. 2018) (citation omitted), *appeal denied*, 651 Pa. 5, 202 A.3d 40 (2019).

At the time of Appellant's sentencing, Section 9714 provided:

**§ 9714. Sentences for second and subsequent offenses**

**(a) Mandatory sentence**.—

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. …

\* \* \*

**(g) Definition**.—As used in this section, the term "crime of violence" means ... burglary as defined in 18 Pa.C.S. § 3502(a)(1) (relating to burglary) ... or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction.

42 Pa.C.S. § 9714(a)(1), (g) (effective April 28, 2014 to August 3, 2020).

The Crimes Code currently defines burglary as follows:

**§ 3502. Burglary**

**(a) Offense defined**.—A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;

(ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present;

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;

(3) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present; or

(4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

\* \* \*

**(c) Grading**.—

(1) Except as provided in paragraph (2), burglary is a felony of the first degree.

(2) As follows:

(i) Except under subparagraph (ii), an offense under subsection (a)(4) is a felony of the second degree.

\* \* \*

18 Pa.C.S.A. § 3502(a), (c)(1)-(2) (effective January 3, 2017).

Notably, however, the burglary statute in effect at the time of

Appellant's June 2012 offense date provided in relevant part:

**§ 3502.  Burglary**

**(a) Offense defined**.—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

\*     \*     \*

**(c) Grading**.—

(1) Except as provided in paragraph (2), burglary is a felony of the first degree.

(2) If the building, structure or portion entered is not adapted for overnight accommodation and if no individual is present at the time of entry, burglary is a felony of the second degree.

\*     \*     \*

18 Pa.C.S.A. § 3502(a), (c)(1)-(2) (effective to September 3, 2012).

In **Commonwealth v. Lites**, 234 A.3d 806 (Pa.Super. 2020), this Court evaluated whether the defendant's prior 1994 burglary conviction constituted a crime of violence for purposes of applying the mandatory minimum under Section 9714.[8]  This Court noted that unlike the current version of the burglary statute, the burglary statute in effect in 1994 did **not** include a requirement that a building be adapted for overnight accommodations or that a person be present, to sustain a conviction under Section 3502(a).  **Lites, supra** at 814-

---

[8] The burglary statute in 1994 was the same as the burglary statute in effect at the time of Appellant's 2012 burglary conviction.

15. Thus, in 1994, to sustain a conviction under Section 3502(a), the Commonwealth was not required to prove that a person was present or that the building was adapted for overnight accommodations. *Id.* at 815.

In deciding whether to apply the mandatory minimum under Section 9714, this Court explained that "a sentencing court must identify the elements of the prior offense, *i.e.*, the 1994 burglary conviction, and determine whether a Pennsylvania equivalent exists, *e.g.*, whether 1994 burglary is equivalent to Section 3502(a)(1) burglary as defined currently." *Id.* at 818 (citing 42 Pa.C.S.A. § 9714(g) (defining "crime of violence" as including Section 3502(a)(1) burglary or equivalent crime under Pennsylvania law at time that crime was committed).

Ultimately, this Court determined that "a review of the elements of former Section 3502(a) and current Section 3502(a)(1) compels the conclusion that they are not equivalent." *Id.* at 819. This Court explained that "[u]nlike the 1994 statutory definition of burglary, the current statutory definition of Section 3502(a)(1) burglary, which the mandatory minimum sentence statute defines as a 'crime of violence,' requires that a person be present at the time of the burglary." *Id.* Thus, "Section 3502(a)(1) burglary is defined more narrowly than it was in 1994. Conversely, in 1994, Section 3502(a) burglary was defined more broadly and did not include the element that a person be present." *Id.*

Under these circumstances, this Court vacated the judgment of

sentence, and remanded for resentencing without imposition of the mandatory minimum sentence under Section 9714:

> In sum, the current Section 3502(a)(1) includes an element—person is present—that is not in the 1994 version of Section 3502(a), we are constrained to hold that burglary (as defined by former Section 3502(a)) is not equivalent to burglary (as defined by current Section 3502(a)(1)). *See id. Compare* 18 Pa.C.S. § 3502(a)(1), with 18 Pa.C.S. § 3502(a) (1994 version). Therefore, the Commonwealth failed to establish that Appellant's 1994 burglary conviction was a crime of violence as defined by the current mandatory minimum statute. *See* 42 Pa.C.S. § 9714(g). We therefore affirm the convictions, vacate the judgment of sentence, …and remand for resentencing because Appellant's 1994 burglary conviction is not a crime of violence.

*Id.* at 819-20 (internal footnote omitted). Further, this Court noted that "[i]t is only after the trial court concludes that the elements of the prior and current Pennsylvania offense are equivalent that the trial court may consider the underlying facts for grading purposes." *Id.* at 818 n.13. As this Court concluded the 1994 and current burglary statutes were not identical as to their elements, the underlying facts set forth in the 1994 criminal information were irrelevant to the analysis under Section 9714. *Id.* at 820 n.14.

Instantly, the circumstances of this case are the same as those in *Lites*. As the *Lites* Court explained, the elements of the burglary statute at the time of Appellant's 2012 offense are not the same as those of the current burglary statute. *See id.* Although the Commonwealth argues that the underlying facts reveal that a person was present during Appellant's prior burglary, the *Lites* Court rejected a similar argument, making clear that the trial court can

only consider the underlying facts once it determines that the elements of the former and current statutes are equivalent. *See id.* Therefore, consistent with **Lites**, we conclude that the court erred in imposing a mandatory minimum sentence under Section 9714 based on Appellant's prior burglary conviction. Accordingly, we vacate and remand for resentencing without imposition of the mandatory minimum sentence, remand with instructions for the court to make a ruling on the admissibility of the third-party guilt evidence pursuant to Pa.R.E. 401-403,[9] and affirm in all other respects.

Judgment of sentence vacated in part. Case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2021

---

[9] If the court decides upon remand that Appellant is entitled to a new trial based on its evaluation of the proffered third-party guilt evidence under the appropriate standard, then Appellant's sentencing issue will be moot.